Michael J. DeBenedictis, Esq.
Efthimios Parasidis, Esq.
*(not yet admitted pro hac vice)*
**DEBENEDICTIS & DEBENEDICTIS LLC**
20 Brace Road, Suite 350
Cherry Hill, NJ 08034
Telephone: (856) 795-2101
mjd@debenedictislaw.com
ep@debenedictislaw.com

*Attorneys for Plaintiff Steven W. Hernandez
& Proposed Class(es)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| STEVEN W. HERNANDEZ, on behalf of himself and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>FLORIDA BOARD OF BAR EXAMINERS, MICHELE A. GAVAGNI, EXECUTIVE DIRECTOR OF THE FLORIDA BOARD OF BAR EXAMINERS, in her official capacity as such, and THE SUPREME COURT OF FLORIDA, in its official capacity as the rule making body of the Florida Board of Bar Examiners,<br><br>     Defendants. | Civil Action<br><br>No.<br><br><br>Plaintiff demands a trial by jury. |

## CLASS ACTION COMPLAINT CHALLENGING
## CONSTITUTIONALITY OF FLORIDA'S ATTORNEY FEE PROVISION

Plaintiff STEVEN W. HERNANDEZ, by way of Complaint against the FLORIDA BOARD OF BAR EXAMINERS ("FBBE" or "Board"), MICHELE A. GAVAGNI, in her official capacity as Executive Director of the Florida Board of Bar Examiners, and THE FLORIDA SUPREME COURT in its official capacity as the rule making body of the Florida Board of Bar Examiners (collectively "Defendants"), states:

## STATEMENT OF THE CASE

1.    At issue here is the constitutionality of Florida's bar application fee structure. Florida assesses a tiered (and steeply increasing) fee for a license to practice law <u>inside of</u> Florida based solely upon how long an applicant has held a license <u>outside of</u> Florida, with the longer an attorney has worked outside of Florida, the greater the fee to practice law in Florida.[1]

2.    By systematically increasing the license application fee based upon how long an attorney has worked out-of-state, Florida's fee structure unnecessarily

---

[1] See **Rule 2-23.4 Attorney Fee.** Applicants who have been admitted to the bar in any jurisdiction for a period in excess of 12 months… file with the Bar Application a fee based on the number of years the applicant has been admitted in another jurisdiction as follows:

    **a. Less than 5 years…** the fee is $1,600.
    **b. 5 or more but less than 10 years…** the fee is $2,000.
    **c. 10 or more but less than 15 years…** the fee is $2,400.
    **d. 15 or more years…** the fee is $3,000.

impinges upon the fundamental "right to travel" found in the United States Constitution. The right encompasses not only the freedom to visit various States within the nation, but also includes the ability for a person to change the State where they reside or work. It is this last concept – the right of any citizen to move about the States – that the Florida Board of Bar Examiners fee policy offends.

3. Florida's license fee structure impermissibly impedes this fundamental right by deterring its exercise or by penalizing those that have exercised it. It does so by creating two classes of persons applying for a license to practice law – those who have practiced outside of Florida and those that have not – and then imposing escalating surcharges on those that have worked outside of Florida previously. Such a fee structure (1) deters those seeking to move a practice to Florida from another state and (2) expresses a preference for home-grown practices. In doing so, Florida discriminates against out-of-state legal practices and practitioners applying for a license to work in Florida in favor of legal practices and practitioners that originate in the State of Florida. Because Florida lacks a legitimate and compelling state interest to justify such unnecessary discrimination, Florida's out-of-state application fee surcharge structure is impermissible.

4. Such a protectionist framework, that selectively targets out-of-state lawyers seeking work in Florida, is similarly void under the commerce clause of the United States Constitution. Florida's fee policy's discriminatory classifications

and effects, as implemented, likewise run afoul of the equal protection clause because the fee classifications do not result in the furthering of a legitimate government interest, but rather evidence a hostility towards experienced out-of-state attorneys bringing their practices to the State of Florida; there is no such compelling government interest, much less a legitimate interest, for implementing a fee structure that discriminates against or disincentivizes otherwise qualified attorneys from coming to Florida for work.[2]

5.   By targeting only those applicants that have worked in other states before seeking admission in Florida, Florida's fee structure discriminates against out-of-state applicants and practices in a manner unrelated to any legitimate policy reason. In erecting such protectionist fee policies and structures, Florida engages in precisely the type of discrimination against out-of-state attorneys seeking work in Florida that the U.S. Constitution prescribes. For these reasons, Plaintiff, on behalf of himself and everyone else similarly situated, seek to end the discriminatory fee

---

[2] Florida uniquely employs this type of discriminatory fee structures against out-of-state licensed lawyers.  As detailed *infra,* within Florida, attorneys are the only class of professionals that are subject to an escalating fee structure based upon how many years a person has worked outside of the state. Neither doctors, nurses, accountants, nor any other licensed professionals currently identified, are subject to an such a license fee structure based upon how long an applicant has been licensed outside of state. Put a different way, Florida does not need to resort to such discrimination to accomplish any legitimate licensing policy goals with respect to all other similarly situated classes of professionals, strongly calling into question any legitimate motivation behind such policy.

policy, declare it invalid, and provide for other attendant equitable relief and refunds as appropriate.

## PARTIES

6.    Plaintiff STEVEN W. HERNANDEZ  ("Plaintiff") is an individual who resides at 111 Alexander Drive, Barnegat, New Jersey.

7.    Defendant FLORIDA BOARD OF BAR EXAMINERS is an administrative agency of the Supreme Court of Florida created under Rule 1-13 of the Rules of the Supreme Court Relating to Admissions to the Bar (the "Rules" or "Bar Admission Rules").  Its purpose under the Rules is "to implement the rules relating to bar admission".  The Board's principal place of business is 1891 Eider Court, Tallahassee, Florida.

8.    Defendant MICHELE A. GAVAGNI is the Executive Director of the Florida Board of Bar Examiners ("FBBE"), and in her official capacity is responsible for FBBE's actions or omissions to act.

9.    Defendant SUPREME COURT OF FLORIDA (the "Florida Supreme Court") is the judicial branch of the state of Florida established under Article V, Section 3 of the Florida Constitution, and has exclusive jurisdiction to regulate the admissions of persons to the practice of law.  Pursuant to Rule 1-12 of the Bar Admission Rules, "[t]he Rules of the Supreme Court Relating to Admissions to the

4

Bar are reviewed, approved, and promulgated by the Supreme Court of Florida",

including, but not limited to, the setting of fees at issue here under Rule 2-23.

## JURISDICTION AND VENUE

10.  This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331 because the action seeks to redress

the depravation of civil rights and involves federal questions and issues arising

under the Constitution of the United States. Moreover, a federal district court has

subject matter jurisdiction over a facial challenge to the constitutionality of

Florida's general rules and procedures governing admission to the bar. *Kirkpatrick*

*v Shaw*, 70 F.3d 100, 102 (11th Cir. 1995).

11.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because

the Florida Board of Bar Examiners has its headquarters and principal place of

business in this District.

12.  This Court has the authority to grant declaratory and injunctive relief

under 28 U.S.C. § 2201-2202 and Fed. R. Civ. P. 57 and 65.

13.  Additionally, because the federal rights asserted by Plaintiffs are

enforceable under 42 U.S.C. § 1983, 42 U.S.C. § 12188 further vests this Court

with the authority to grant the Plaintiff and the proposed class the injunctive,

declarative, and equitable relief requested herein.

# FACTS

## FEE STRUCTURE AT ISSUE

14.  To be admitted to the Florida Bar, a person must meet character qualifications, pass a substantive test, file the appropriate application(s) and pay a fee.[3]

15.  With respect to the required fee, the Supreme Court of Florida creates two classes of applicants – those that have been previously admitted to the bar in any jurisdiction for a period in excess of 12 months and those that have not, and then imposes an escalating fee for those that have based upon how long they have – in the form of what Florida terms an "Attorney Fee".

16.  Attorneys that have previously been admitted to the bar in any jurisdiction for a period in excess of 12 months are required to pay this "Attorney Fee" before being permitted to take the Florida Bar exam. (Rule 2-23).

17.  Florida's Attorney Fee is set by Defendant Supreme Court of Florida and codified in Rule 2-23 *et seq.* as follows:

> **2-23 Application Fees.**  All fees are set by order of the Supreme Court of Florida and are subject to change by published order of the court. The total application fee is due and payable to the Florida Board of Bar Examiners by the applicant when filing the Bar

---

[3] Florida does not have reciprocity with any other jurisdiction, and all applicants who do not qualify for a special exception for admission are required to go through the same admission process (hereinafter "Admission via Bar Exam").

Application, the Registrant Bar Application, or the Supplement to Registrant Bar Application, and no application will be considered complete without the full fee….

**…**

**2-23.4 Attorney Fee.** Applicants who have been admitted to the bar in any jurisdiction for a period in excess of 12 months, excluding time spent in military service of the United States, must file with the Bar Application a fee based on the number of years the applicant has been admitted in another jurisdiction as follows:

   **a. Less than 5 years.**  If the applicant has been admitted in another jurisdiction for more than 1 year but less than 5 years, the fee is $1,600.

   **b. 5 or more but less than 10 years.** If the applicant has been admitted in another jurisdiction for 5 years or more but less than 10 years, the fee is $2,000.

   **c. 10 or more but less than 15 years.**  If the applicant has been admitted in another jurisdiction for 10 years or more but less than 15 years, the fee is $2,400.

   **d. 15 or more years.**  If the applicant has been admitted in another jurisdiction for 15 or more years, the fee is $3,000.

18.  As structured and as implemented, Florida's Attorney Fee scale operates to increasingly burden and impede attorneys from applying for a license to practice law in Florida the longer they have practiced law elsewhere.

19.  As structured and as implemented, Florida's Attorney Fee scale operates to favor legal practices that originate in Florida, as opposed to outside of Florida, via favorable license fee provisions.

20.  As structured and as implemented, Florida's Attorney Fee scale has an actual impact on interstate commerce.

21.  As structured and as implemented, Florida's Attorney Fee scale places an actual burden on interstate travel.

22.  Florida has no legitimate state interest in discouraging experienced attorneys from working in Florida.

23.  Florida has no legitimate state interest in discriminating against out-of-state attorneys and legal practices in favor of home-state attorneys and legal practices.

## MR. HERNANDEZ

24.  Plaintiff Steven W. Hernandez, is a 50-year-old married father of two children.

25.  He is a natural born citizen of the United States and currently resides in, and is resident of, the State of New Jersey.

26.  Mr. Hernandez is a January 2004 graduate of Rutgers School of Law – Camden, located in Camden, New Jersey.

27.  Mr. Hernandez holds a license to practice law from the Supreme Court of New Jersey, and is a member, in good standing, of the Bar of the State of New Jersey.

28.   Mr. Hernandez has been licensed to practice law in New Jersey since May 2004, when he first became a member of the bar of that jurisdiction.

29.   Mr. Hernandez legal practice is based in New Jersey.

30.   Mr. Hernandez is a practicing attorney and plans to continue to be a practicing attorney for the foreseeable future.

31.   Mr. Hernandez has made his living and has supported his family financially as a practicing attorney in New Jersey since May, 2004.

32.   The practice of law is Mr. Hernandez's primary means of income and support.

33.   Mr. Hernandez currently owns and operates The Hernandez Law Firm, P.C.

34.   His office is located in Toms River, New Jersey, where it has been since April 2007.

35.   Mr. Hernandez would like to move his legal practice from New Jersey to Florida.

36.   To do so, Mr. Hernandez requires a license to practice law in Florida.

37.   On or about October 29, 2020, Mr. Hernandez applied for a license to practice law and otherwise work as an attorney in the State of Florida and was surprised to learn that, just to sit for the Florida bar examination, he was required to pay an enhanced Attorney Fee of $3,000.00 based solely on the fact that Mr.

Hernandez has had a license to practice law in another jurisdiction for more than 15 years.

38.  This fee represents an approximate $2,000 surcharge for the right to work as an attorney in Florida (as compared to an attorney that has not previously been admitted to any jurisdiction for over 12 months).

39.  Mr. Hernandez paid the $3,000 Attorney Fee as required under the Rules.

40.  Had Mr. Hernandez not previously been admitted to practice law in New Jersey (or in any other jurisdiction) for a period in excess of 12 months, the fee to apply for the same license could have been $1,000.00 under the Rules.

41.  The $3,000 that Florida charged Mr. Hernandez is exceedingly high by all measures.

42.  The $3,000 application fee is the highest fee charged by any jurisdiction in the United States for admission via a bar exam, and, upon information and belief, is nearly double the second highest (non-Florida) general admission fee via examination (as compared to "on motion" via reciprocity or *pro hac vice*).

43.  To put the $3,000 fee in context, New Jersey currently charges a flat $675 fee for timely applicants to apply for admission to New Jersey via the bar exam.

44.  New York currently charges timely applicants a flat $250 fee to apply for admission to the New York bar via the bar exam.

## FLORIDA BAR ADMISSION AND FEE STRUCTURE

45.   The admission of attorneys to the practice of the profession of law is a judicial function, and the Rules governing admission, their related fees, and the purpose are laid out by the Supreme Court of Florida in the *Rules of the Supreme Court Relating to Admissions to the Bar*.

46.   The *Rules of the Supreme Court Relating to Admissions to the Bar* are reviewed, approved, and promulgated by Defendant Supreme Court of Florida.

47.   The Florida Board of Bar Examiners is an administrative agency of the Supreme Court of Florida created by the Court to implement the Rules, including, but not limited to, those relating to bar admission.

48.   Generally speaking, to seek admission to "The Florida Bar", a person must meet character eligibility/fitness qualifications via a background investigation(s), pass a substantive test in the form of the Florida bar exam, file the appropriate application(s), and pay a fee.

49.   While such requirements are not unique to Florida, and may be related to legitimate policy goals, what is unique among professional licenses in Florida is the fact that established attorneys seeking to work in the State are charged an escalating fee scale based solely upon how long they have worked as an attorney outside of Florida.

50.  As outlined above, Rule 2-23, entitled "Attorney Fee" sets the fee required to apply for a license to practice law inside of Florida as an escalation function of how long an attorney has been a member of a bar of outside of Florida at the time of application to Florida.

51.  Simplified, for previously licensed attorneys, Florida's license fee "schedule" is as follows:

| YEARS OF PRACTICE OUTSIDE FLORIDA: | FEE: |
|---|---|
| Less than (1) year: | $1,000.00 |
| Between (1) and (5) years: | $1,600.00 |
| Between (5) and (10) years: | $2,000.00 |
| Between (10) and (15) years: | $2,400.00 |
| Over (15) years: | $3,000.00 |

*See* Florida Board of bar Examiners Application Fee Worksheet https://www.floridabarexam.org/__85257bfe0055eb2c.nsf/52286ae9ad5d845185257c07005c3fe1/f16fa33d1fad1cfb85257c0c0072adc0 (last accessed May 11, 2021)

## PUBLIC POLICY BEHIND THE RULES

52.  The policy goals behind Florida's legal licensing and admission rules are contained in the Rules themselves.

53.  To practice law in the State of Florida, an individual must be a member, in good standing, of the Florida State Bar Association (the "Florida Bar").

54.  To seek admission to the Florida Bar, an applicant must produce satisfactory evidence of good moral character, and adequate knowledge of the standards and ideals of the profession, and proof that the applicant is otherwise fit to take the oath and to perform the obligations and responsibilities of an attorney (Rule 2-12).

55.  As set forth in Rule 1-14.1, the primary purposes of the character and fitness investigation before admission to The Florida Bar are to protect the public and safeguard the judicial system:

> 1-**14 Background Investigations.**
> 1-**14.1 Purpose.** The primary purposes of the character and fitness investigation before admission to The Florida Bar are to protect the public and safeguard the judicial system.

56.  The board must ensure that each applicant has met the requirements of the rules with regard to character and fitness, education, and technical competence prior to recommending an applicant for admission.

57.  As set forth in Rule 1-15, the primary policy goals behind the written test requirement is to insure a minimal technical competence:

> **1-15.1 Purpose.** The primary purpose of the bar examination is to ensure that all who are admitted to The Florida Bar have demonstrated minimum technical competence.

58.   While the stated and presumed policy goals behind the examination, application, and character evaluations – to ensure that persons admitted to the Florida bar have the requisite knowledge, skills, and moral character and fitness to practice law – are certainly lawful and legitimate, the discriminatory fee structure used by the Board is not and/or does not legitimately advance those goals.

59.   By impermissibly targeting only those applicants that have worked in other States before seeking admission in Florida with an additional, much higher application fee, Florida's fee structure discriminates against out-of-state practitioners in a manner insufficiently related to any legitimate policy reason.

## FLORIDA DOES NOT CHARGE OTHER PROFESSIONALS MORE

60.   Florida's discriminatory bar license fee appears to be unique within the State of Florida when one considers other Florida professional application fees.

61.   For example, upon information and belief, all other Florida licensing agencies accomplish their stated policies goals without resorting to such a discriminatory fee structure.

62.   To become a state-licensed medical doctor within the State of Florida, one must pay a flat application fee of $350, regardless of years of service in or out of the state. *See* https://flboardofmedicine.gov/licensing/medical-doctor-unrestricted/#tab-fees  (last accessed March 3, 2021).

63.   To become a state-licensed physician assistant within the State of Florida, one must pay a flat application fee of $100, regardless of years of service in or out of the state. *See* https://flboardofmedicine.gov/licensing/physician-assistant-licensure/#tab-fees  (last accessed March 3, 2021).

64.   To receive a state-licensed medical faculty certificate within the State of Florida, one must pay a flat application fee of $350, regardless of years of service in or out of the state. *See* https://flboardofmedicine.gov/licensing/medical-faculty-certificate/#tab-fees  (last accessed March 3, 2021).

65.   To become a state-licensed anesthesiologist assistant within the State of Florida, one must pay a flat application fee of $150, regardless of years of service in or out of the state. *See* https://flboardofmedicine.gov/licensing/anesthesiologist-assistant-licensure/#tab-fees  (last accessed March 3, 2021).

66.   To become a state-licensed visiting physician in a cancer center within the State of Florida, one must pay a flat application fee of $300, regardless of years of service in or out of the state. *See*

https://flboardofmedicine.gov/licensing/temporary-certificate-for-visiting-physicians-cancer-centers/#tab-fees (last accessed March 3, 2021).

67.   To become a state-licensed athlete agent within the State of Florida, one must pay a flat application fee of $630, regardless of years of service in or out of the state. *See*

http://www.myfloridalicense.com/dbpr/pro/athlete/documents/AA4101_Licensure.

pdf (last accessed March 3, 2021).

68.   To become a state-licensed certified electrical contractor within the State

of Florida, one must pay a flat application fee of $316.25, regardless of years of

service in or out of the state. *See*

http://www.myfloridalicense.com/dbpr/pro/elboard/documents/ECLB8_Exam.pdf

(last accessed March 3, 2021).

69.   To become a state-licensed harbor pilot within the State of Florida, one

must pay a flat application fee of $200 per port, regardless of years of service in or

out of the state. *See*

http://www.myfloridalicense.com/dbpr/pro/pilotc/documents/BOPC1_Exam.pdf

(last accessed March 3, 2021).

70.   To become a state-licensed certified public accountant within the State of

Florida, one must pay a flat application fee of $50, regardless of years of service in

or out of the state. *See*

http://www.myfloridalicense.com/dbpr/cpa/documents/DBPRCPA2LicensureAppl

ication.pdf (last accessed March 3, 2021).

71.   To become a state-licensed home inspector within the State of Florida, one

must pay a flat application fee of $230, regardless of years of service in or out of

the state. *See*

http://www.myfloridalicense.com/dbpr/pro/homein/documents/HI0401_Applicatio

n_for_Licensure.pdf (last accessed March 3, 2021). The application form for home

inspectors maintains two categories – one of which is for inspectors with 10 or

more years of experience. *Id*. However, the application fee is exactly the same. *Id*.

Unlike with attorneys in the State of Florida, there is no discriminatory pricing for

experienced home inspectors. *Id*.

72.   Although these examples are not an exhaustive list of all licensing fees in

the State, the examples illustrate that the discriminatory pricing scheme utilized for

the Florida bar examination is highly irregular within the State of Florida for

licensed professionals.

73.   Indeed, counsel for Plaintiffs have not found one licensed profession

within the state of Florida that has a discriminatory application fee schedule akin to

that which Florida mandates for attorneys.

74.   Discriminatory fee structures based upon years licensed out-of-state are

not necessary to accomplish any legitimate policy behind Florida's professional

license requirements.

## **CLASS ALLEGATIONS**

75.   In addition to his individual claims, Plaintiff brings this action pursuant to

Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of

all persons who paid the Attorney Fee for admission to the Florida Bar.

76.   Excluded from the Class are members of the Florida Board of Bar Examiners, the Florida Supreme Court, and members of their immediate families.

77.   At issue here are class-wide constitutionality questions involving the lawfulness of the Defendants' policies.

78.   The gravamen of the complaint attacks Florida's Attorney Fee policy and (over) charges collected under it, and as such a uniform injunction and/or declaratory judgment would provide relief to each member of the class.

79.   This is a prototypical civil rights action involving a state policy, and its interplay with the commerce clause, due process clause, and the privileges and immunities clause under the United State Constitution, involving legal questions and analysis traditionally susceptible to uniform class wide decrees and adjudication.

80.   Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

81.   Adjudications of the constitutional issues here with respect to any individual class members, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications.

82.   The Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief regarding the policy and refunds is appropriate respecting the class as a whole.

83.   The proposed Class is so numerous that joinder of all members is impracticable. The precise number of members in the Class is not yet known to the proposed named Plaintiff, but he estimates that it is well in excess of 1,000 people.

84.   Plaintiff bases this estimate on publicly released bar exam pass rates by Defendant Florida Board of Bar Examiners, which lists the number of experienced attorneys per administration, the number passing, and a pass rate. For example, defendant Florida Board of Bar Examiners' web site lists a total of 270 individuals characterized as "Admitted to the Practice of Law" taking the October 2020 administration of the bar exam.  *See* https://www.floridabarexam.org/__85257bfe0055eb2c.nsf/52286ae9ad5d84518525 7 c07005c3fe1/b0a2512f4f4dc8f9852586260055c210 (last accessed April 8, 2021).

85.   There are questions of law and fact that are common to the Class, including, but not limited to, the following:

- whether the Defendants acted under the color of law;

- whether the Attorney Fee as structed and implemented violates the United States Constitution;

- whether class members are entitled to declaratory judgment;

- whether class members are entitled to injunctive relief and other equitable relief and, if so, what is the nature of such relief;

- whether Defendants must disgorge any fees collected under the Attorney Fee at issues; and

- whether class members are entitled to refunds of any Attorney Fee assessed and paid.

86.  Plaintiff's claims against Defendants are typical of the claims of the Class because Plaintiff and all other members of the class were subject to the Attorney Fee policy in question.

87.  Plaintiff will fairly and adequately protect the interests of the Class.

88.  Plaintiff has demonstrated his commitment to the case, has diligently educated himself as to the issues involved, and to the best of his knowledge does not have any interests adverse to the proposed class.

89.  Plaintiff's counsel are experienced in complex class litigation. Counsel have the resources, expertise, and experience to prosecute this action on behalf of the Plaintiff's class.

90.   The questions of law and fact common to the members of the class predominate over any questions affecting only individual members.

91.   A class action is superior to other available methods for a fair and efficient adjudication of this controversy as many members of the proposed class.

92.   Given the relative size of the Florida Attorney Fee charges incurred by the individual members of the Class, the diffuse impact of the policy, and homogeneity of the issues, the interests of members of the Class individually controlling the prosecution of separate actions is minimal.

93.   There is no litigation already commenced, nor is there anticipated to be subsequent litigation commenced by other members of the Class concerning Defendants' alleged conduct.

94.   Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action – for example, upon information and belief, the Florida Bar keeps permanent records of all applicants, their status and their charges.

## 42 U.S.C. § 1983 PLEADINGS

95.   Plaintiffs allege the foregoing allegations violate 42 U.S.C § 1983.

96.  Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate their rights under the United States Constitution, including, but not limited to the right to travel.

97.  As a governmental agency(s), branch(s), and/or executive(s) thereto, as well as the fact that the fee structure at issue is a governmental policy and rule, the Defendants jointly and severally acted under the color of law for the proposes of 42 U.S.C § 1983.

98.  The Attorney Fee at issue constitutes a deliberate decision of government officials to deprive a person of life, liberty and/or property.

99.  Plaintiffs seek a declaration from this Court affirming that their rights have been violated, Florida's Attorney Fee structure found in Rule 2-23 is void and unenforceable, a permanent injunction against future enforcement of Florida's Attorney Fee structure found in Rule 2-23, and disgorgement of (over) charges assessed and/or collected under any void policy.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE DORMANT COMMERCE CLAUSE
## (VIA 42 U.S.C. § 1983)

100. The preceding allegations are incorporated by reference.

101. The dormant commerce clause prohibits discrimination against interstate commerce, either facially or in practical effect. *See Brown–Forman Distillers Corp. v. New York Liquor Authority*, 476 U.S. 573, 579 (1986).

102. In *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) the Supreme Court found that legal services affected interstate commerce and the delivery of legal services were subject to regulation under the Commerce Clause. As the Court has indicated, lawyer competition in the market place of ideas and commerce makes everyone better. *See FTC v. Superior Court Trial Lawyers Assn*., 493 U.S. 411, (1989).

103. "Axiomatic in dormant Commerce Clause jurisprudence is the principle that a state cannot impede free market forces to shield in-state businesses from out-of-state competition." *Cloverland–Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Board*, 298 F.3d 201, 210 (3d Cir. 2002). "'(U)ltimately competition will produce not only lower prices, but also better goods and services.' *National Society of Professional Engineers v. United States*, 435 U.S. 679, 695 (1978).

104. Economic protection is not a legitimate state interest. *Piper*, 470 U.S. at 285 n. 18 (1985).

105. If a statute "discriminates on its face against interstate commerce," or if a statute is plainly "motivated by 'simple economic protectionism,' " the statute is presumptively invalid. *United Haulers Ass'n*, 550 U.S. at 338 (2007). The presumed invalidity "can only be overcome by a showing that the State has no other means to advance a legitimate local purpose." *Id*.

106. In determining if a state regulation violates the Commerce Clause, the Supreme Court has set forth a two-tiered approach to analyzing state economic regulation under the Commerce Clause. When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, the courts have generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 578-79 (1986).

107. In deciding a case under the commerce clause, the court examines both the gravity of the interference with free interstate trade and the justifications offered for it, to see whether the burden is an unreasonable one in the circumstances. If the state law is obviously protectionist, it is struck down without much hesitation—the gap between interference and justification is widest. If the regulation is apparently evenhanded, it is struck down only if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *see also Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471–72 (1981).

108. Florida's Bar Exam Fee Rule is discriminatory on its face because it mandates a bar examination fee that discriminates against Florida bar applicants based on the number of years in which they have practiced law outside the state of Florida.

109. Florida's Bar Exam Fee Rule has a protectionist purpose and/or effect, and thus violates the Dormant Commerce Clause.

110. The discriminatory fee schedule is not rationally related to a legitimate state interest – the only interest that the fee schedule serves is a protectionist one, and courts are uniform in finding that protectionist economic policies are violative of interstate commerce principles.

111. Florida's discriminatory Bar Exam Fee Rule violates the Dormant Commerce Clause because it discriminates against non-Florida legal practices, has a discriminatory impact against non-Florida legal practices, serves protectionist aims, discourages out-of-state lawyers from applying for the Florida bar, imposes an undue burden on interstate commerce, and propagates discriminatory treatment against out-of-state residents seeking work as an attorney within Florida.

112. The burden imposed on bar applicants who are experienced out-of-state attorneys can be as high as 200% from the base rate application fee for an in-state applicant with no experience. This is a significant surcharge that penalizes out-of-

state attorneys for the mere fact that they have worked as a lawyer outside the State of Florida.

113. This form of discrimination is not closely related to furthering a legitimate, constitutionally-protected state interest.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of himself and those similarly situated requests that this Court:

a) Enter a judgment declaring that the Florida's Attorney Fee provision as implemented under Rule 2-23 violates the United States Constitution;

b) Issue a permanent injunction prohibiting Defendants from enforcing the escalating application fee structure;

c) Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

d) Grant or award any other relief, including but not limited to appropriate refunds and/or disgorgement, that this Court deems just and proper.

## **SECOND CAUSE OF ACTION**
## **VIOLATION OF THE RIGHT TO TRAVEL**
## **(VIA 42 U.S.C. § 1983)**

114. The preceding allegations are incorporated by reference.

115. As the U.S. Supreme Court has held, "[f]reedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 901-902 (1986); *Dunn v. Blumstein,* 405 U.S. 330, 338 (1972) (*quoting United States v. Guest,* 383 U.S. 745, 758 (1966)).  As the Court has further elucidated, "it is clear that the freedom to travel includes the freedom to enter and abide in any State in the Union." *Soto-Lopez*, 476 U.S. at 902 (citations and internal quotations omitted).

116. The Court has likewise explained that "[t]he textual source of the constitutional right to travel, or, more precisely, the right of free interstate migration, though, has proved elusive. It has been variously assigned to the Privileges and Immunities Clause of Art. IV, see, e. g., Zobel, supra, at 71 (O'CONNOR, J., concurring in judgment), to the Commerce Clause, see Edwards v. California, 314 U.S., at 173 -174, and to the Privileges and Immunities Clause of the Fourteenth Amendment, see, e. g., id., at 177-178 (Douglas, J., concurring). The right has also been inferred from the federal structure of government adopted by our Constitution." *Soto-Lopez*, 476 U.S. at 902-903.

117. However, in light of the unquestioned historic acceptance of the principle of free interstate migration, and of the important role that principle has played in transforming many States into a single Nation, the Supreme Court has made crystal

clear that the Court has "not felt impelled to locate this right definitively in any particular constitutional provision." *Soto-Lopez*, 476 U.S. at 902-903 (citations omitted). Whatever its origin, the right to travel is firmly established and has been repeatedly recognized in Supreme Court jurisprudence. *Id*. (citations omitted).

118. A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when a State uses "any classification which serves to penalize the exercise of that right." *Id*. (citations and internal quotations omitted). Most right-to-travel cases have principally involved the latter, indirect manner of burdening the right. *Id*. In recent years, State laws that violate the right to travel have classified residents according to the time they established residence, resulting in the unequal distribution of rights and benefits among otherwise qualified bona fide residents. *See id*. at 903-904. Because the creation of different classes of residents raises equal protection concerns, the Supreme Court also has relied upon the Equal Protection Clause in right to travel cases. *See id*. Whenever a state law infringes a constitutionally protected right, courts much undertake intensified equal protection scrutiny of the law. *Id*.

119. At times the Supreme Court expressly inquires whether the distinction drawn by the State between older and newer residents burdens the right to migrate. *Id*. When such a burden exists, a State must provide a compelling justification. *Id*. (citations omitted). In other cases, where a court has concluded that the contested

classifications did not survive even rational basis scrutiny, the court did not inquire whether enhanced scrutiny was appropriate. *Id.* (citations omitted).  As the Supreme Court makes clear, "[t]he analysis in all of these cases, however, is informed by the same guiding principle—the right to migrate protects residents of a State from being disadvantaged, or from being treated differently, simply because of the timing of their migration, from other similarly situated residents." *Id.* at 904-905 (citations omitted).

120. Florida's Attorney Fee provision violates the right to travel because it unnecessarily economically disadvantages and/or treats differently experienced attorneys simply because of the timing of their desire to work in Florida, discriminates against non-Florida initiated practices, has a discriminatory impact against non-Florida based practitioners and residents, serves protectionist aims, discourages out-of-state lawyers from applying for the Florida bar, imposes an undue burden on interstate commerce, and/or propagates discriminatory treatment against out-of-state residents.

121. Florida's Attorney Fee provision has an actual deterrent effect on interstate travel.

122. Florida's Attorney Fee provision violates the right to travel, and is not closely related to furthering a legitimate, constitutionally-protected state interest.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of himself and those similarly situated requests that this Court:

a) Enter a judgment declaring that the Florida's Attorney Fee provision as implemented under Rule 2-23 violates the United States Constitution;

b) Issue a permanent injunction prohibiting Defendants from enforcing the escalating application fee structure;

c) Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

d) Grant or award any other relief, including but not limited to appropriate refunds and/or disgorgement, that this Court deems just and proper.

## **THIRD CAUSE OF ACTION**
## **VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE U.S. CONSTITUTION**
## **(VIA 42 U.S.C. § 1983)**

123. The preceding allegations are incorporated by reference.

124. Equal protection jurisprudence is typically concerned with governmental classification and treatment that affect some discrete and identifiable group of

citizens differently from other groups. *See, e.g., Engquist v. Or. Dep't of Agric.,* 128 S. Ct. 2146, 2152 (2008).

125. As the U.S. Supreme Court had held, under the Equal Protection Clause of the U.S. Constitution, "unequal treatment is justified if the state can prove that such treatment was rationally connected to a legitimate state interest." *New York City Transit Authority v. Beazer,* 440 U.S. 568 (1979).

126. Furthermore, as the Eleventh Circuit has elucidated, "we have recognized any individual's right to be free from intentional discrimination at the hands of government officials." *See, e.g., Campbell v. Rainbow City, Ala.,* 434 F.3d 1306, 1313-1314 (11th Cir. 2006); *E&T Realty v. Strickland,* 830 F.2d 1107, 1112 (11th Cir. 1987).

127. Due to Florida's discriminatory bar application fee schedule, Florida treats experienced attorneys as unequals when compared to inexperienced attorneys, for the mere fact that one group has legal experience <u>outside</u> of the State of Florida.

128. The rule also violates equal protection because out-of-state lawyers, as a class, are subject to discriminatory fee structures when seeking a Florida license when other out-of-state professionals—including medical doctors, physician assistants, medical faculty, anesthesiologist assistants, visiting physicians, athlete agents, certified electrical contractors, harbor pilots, certified public accountants, and home inspectors—are not.

129. The discriminatory bar exam fee rule is not rationally related to a legitimate state interest. For example, the discriminatory bar exam fee rule, *inter alia*, is not rationally related to an applicant's ability to practice law or sit for the bar exam in Florida. It simply is a protectionist policy – something that courts have routinely held is not a legitimate state interest.

130. Therefore, Florida's discriminatory bar exam fee rule violates the Equal Protection Clause of the U.S. Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and those similarly situated requests that this Court:

a) Enter a judgment declaring that the Florida's Attorney Fee provision as implemented under Rule 2-23 violates the United States Constitution;

b) Issue a permanent injunction prohibiting Defendants from enforcing the escalating application fee structure;

c) Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

d) Grant or award any other relief, including but not limited to appropriate refunds and/or disgorgement, that this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE DUE PROCESS CLAUSE OF THE U.S.**
**CONSTITUTION**
**(VIA 42 U.S.C. § 1983)**

131. The preceding allegations are incorporated by reference.

132. The Due Process Clause of the U.S. Constitution provides, "No state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1.

133. The Due Process Clause "extends beyond the command of fair procedures" and comprises a "substantive component as well." *County of Sacramento v. Lewis*, 523 U.S. 833, 856, (1998) (Kennedy, J., concurring).

134. As the Eleventh Circuit has detailed, "substantive due process has two strands—one that protects against deprivation of fundamental rights and one that protects against arbitrary legislation." *Hillcrest Property, LLP v. Pasco County*, 915 F.3d 1292, 1297 (11th Cir. 2019).

135. Moreover, "when "state-created rights are infringed by a 'legislative act,' the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational government action." *Kentner v. City of*

*Sanibel*, 750 F.3d 1274, 1279−80 (11th Cir. 2014) (quoting *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005) (per curiam)).

136. Florida's discriminatory bar application fee schedule violates the substantive and procedural components of the Due Process clause of the U.S. Constitution because out-of-state attorneys are subject to a discriminatory process when applying for admission for the Florida bar in a manner that impacts fundamental rights.

137. The discriminatory bar exam fee rule is not rationally related to a legitimate state interest. For example, the discriminatory bar exam fee rule, *inter alia*, is not rationally related to an applicant's ability to practice law or sit for the bar exam in Florida. It simply is a protectionist policy – something that courts have routinely held is not a legitimate state interest.

Therefore, Florida's discriminatory bar exam fee rule violates the Due Process Clause of the U.S. Constitution.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff, on behalf of himself and those similarly situated requests that this Court:

a) Enter a judgment declaring that the Florida's Attorney Fee provision as implemented under Rule 2-23 violates the United States Constitution;

b) Issue a permanent injunction prohibiting Defendants from enforcing the escalating application fee structure;

c) Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

d) Grant or award any other relief, including but not limited to appropriate refunds and/or disgorgement, that this Court deems just and proper.

## FIFTH CAUSE OF ACTION
## VIOLATION OF U.S. CONSTITUTION ARTICLE IV SECTION 2
## PRIVILEGES AND IMMUNITIES CLAUSE
## (VIA 42 U.S.C. § 1983)

138. The preceding allegations are incorporated by reference.

139. In the seminal case of *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985), the U.S. Supreme Court held that the practice of law is a "privilege" under the Privileges and Immunities Clause of the U.S. Constitution, Article IV, Section 2. *Id.* at 280-281. The Court further held that "the practice of law is important to the national economy" and "activities of lawyers play an

important role in commercial intercourse." *Id.* (*citing Goldfarb v. Virginia State Bar*, 421 U.S. 773, 788 (1975)). As the Court explained, "the lawyer's role in the national economy is not the only reason that the opportunity to practice law should be considered a 'fundamental right.' We believe that the legal profession has a noncommercial role and duty that reinforce the view that the practice of law falls within the ambit of the Privileges and Immunities Clause." *Id.* at 281.

140. The Privileges and Immunities Clause was "intended to create a national economic union," *id.* at 279-280, and to prevent "a state from discriminating against citizens of other states in favor of its own." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 511 (1939). The fundamental rights protected by the Privileges and Immunities Clause include "the right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of habeas corpus; to institute and maintain actions of any kind in the courts of the state." *Supreme Court of New Hampshire*, 470 U.S. at 281 n. 10. Moreover, the norm under the Privileges and Immunities Clause is comity. *See Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988).

141. The Supreme Court has recognized that State barriers that serve to protect their own lawyers from professional competition is not a legitimate state interest. *Supreme Court of New Hampshire*, 470 U.S. at 285 n. 18. "The Privileges and

Immunities Clause was designed primarily to prevent such economic protectionism." *Id*.

142. The practice of law is a "privilege" under the Privileges and Immunities Clause of the U.S. Constitution.

143. The practice of law is important to the national economy and activities of lawyers play an important role in commercial intercourse.

144. Florida's Attorney Fee impacts interstate commerce.

145. State barriers that serve to protect their own lawyers from professional competition is not a legitimate state interest.

146. Florida's Attorney Fee is one such barrier.

147. The State of Florida has created a system where the burden imposed on bar applicants who are experienced out-of-state attorneys can be as high as 200% from the base rate application fee for an in-state applicant with no experience. This is a significant surcharge that penalizes out-of-state attorneys for the mere fact that they have worked as a lawyer outside the State of Florida.

148. Florida's discriminatory Bar Exam Fee Rule violates Article IV, Section 2, of the Privileges and Immunities Clause because it discriminates against non-Florida residents, has a discriminatory impact against non-Florida residents, serves protectionist aims, and propagates discriminatory treatment against out-of-state residents.

149. This form of discrimination is not closely related to furthering a legitimate, constitutionally-protected state interest.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of himself and those similarly situated requests that this Court:

a) Enter a judgment declaring that the Florida's Attorney Fee provision as implemented under Rule 2-23 violates the United States Constitution;

b) Issue a permanent injunction prohibiting Defendants from enforcing the escalating application fee structure;

c) Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

d) Grant or award any other relief, including but not limited to appropriate refunds and/or disgorgement, that this Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF U.S. CONSTITUTION FOURTEENTH AMENDMENT**
**PRIVILEGES AND IMMUNITIES CLAUSE**
**(VIA 42 U.S.C. § 1983)**

150. The preceding allegations are incorporated by reference.

151. In the seminal case of *Saenz v. Roe*, 526 U.S. 489 (1998), the U.S. Supreme Court ruled that "the Privileges and Immunities Clause of the Fourteenth Amendment is the guardian of one aspect of a right that courts had already recognized for some time: the right to interstate travel. Specifically, the Privileges and Immunities Clause of the Fourteenth Amendment was held to guarantee the rights of citizens of one state who establish residency in another state to access 'the same privileges and immunities enjoyed by other citizens of the same State.'" *NAAMJP v. Castille*, 66 F. Supp. 3d 633, 648 (E.D. Pa. 2014) (*citing Saenz v. Roe*, 526 U.S. 489, 501-502 (1998)).

152. The right to travel embraces three different components: the right to enter and leave another State; the right to be treated as a welcome visitor while temporarily present in another State; and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. *See Saenz v. Roe*, 526 U.S. 489, 498-500 (1998). As the Court has indicated, newly arrived citizens must have the same right to privileges and immunities enjoyed by other citizens of their new State; this is encompassed in the third aspect of the right to travel. *See id*. at 502-504. That right is protected by the new arrival's status as both a state citizen and a United States citizen, and it is plainly identified in the Fourteenth Amendment's Privileges and Immunities Clause. *Id*.

153. In addition to the aforementioned guarantees, the "Privileges and Immunities clause guarantees that states cannot treat residents differently based on how long they have lived in the state." *See, e.g., NAAMJP v. Castille*, 66 F. Supp. 3d 633, 648 (E.D. Pa. 2014).

154. The State of Florida has created a system where the burden imposed on bar applicants who are experienced out-of-state attorneys can be as high as triple the base rate application fee for an in-state applicant with no experience. This is a significant surcharge that penalizes out-of-state attorneys for the mere fact that they have worked as a lawyer outside the State of Florida.

155. Florida's discriminatory Bar Exam Fee Rule violates the Privileges and Immunities Clause of the Fourteenth Amendment of the U.S. Constitution because it discriminates against non-Florida residents, has a disproportionate discriminatory impact against non-Florida residents, serves protectionist aims, and propagates discriminatory treatment against out-of-state residents and/or professionals.

156. This form of discrimination is not closely related to furthering a legitimate, constitutionally-protected state interest.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of himself and those similarly situated requests that this Court:

a) Enter a judgment declaring that the Florida's Attorney Fee provision as implemented under Rule 2-23 violates the United States Constitution;

b) Issue a permanent injunction prohibiting Defendants from enforcing the escalating application fee structure;

c) Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

d) Grant or award any other relief, including but not limited to appropriate refunds and/or disgorgement, that this Court deems just and proper.

[signature page following]

Dated: <u>June 22, 2021</u>

Respectfully submitted,

<u>*/s/ Michael J. DeBenedictis*</u>
**DeBenedictis & DeBenedictis LLC**
By:  Michael J. DeBenedictis, Esq.
(NJ Attorney ID # 03922-2001)
*Pro Have Vice application forthcoming*
Efthimios Parasides, Esq.
(NY Attorney ID # 3989001)
*Pro Hac Vice application forthcoming*
20 Brace Road
Suite 350
Cherry Hill, NJ 08034
(856) 795-2191
mjd@debenedictislaw.com
ep@debenedictislaw.com

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury as to all appropriate issues.

# FED. R. CIV. P. 5.1 STATEMENT

Fed.R.Civ.P. Rule 5.1(a)(1)(B) &(a)(2), entitled  "Constitutional Challenge to a

Statute", requires:

> (a) Notice by a Party. A party that files a pleading, written motion, or
> other paper drawing into question the constitutionality of a federal
> or state statute must promptly:
>
> (1) file a notice of constitutional question stating the question and
> identifying the paper that raises it, **if**:
> …
>     (B) a state statute is questioned and the parties do not include
> the state, one of its agencies, or one of its officers or employees in
> an official capacity; and
>     (2) serve the notice and paper on the Attorney General of the
> United States if a federal statute is questioned—or on the state
> attorney general if a state statute is questioned—either by certified
> or registered mail or by sending it to an electronic address
> designated by the attorney general for this purpose.

(emphasis added).  While the complaint draws into question the constitutional

validity of Florida's Attorney Fee structure, and presents the constitutional

question of whether Florida may base its fee for a license to practice law inside of

Florida upon how long an applicant has held a license to practice law outside

Florida, **because the parties include** the "state, one of its agencies, or one of its

officers or employees in an official capacity" , no such notice by the parties to the

state attorney general is necessary.

Pursuant to Fed. R. Civ. P. 5.1(b), this does not obviate this Forum's equivalent

Notice requirements under 28 U.S.C. §2403, and the plaintiff's counsel stand ready

to assist in preparing a proposed form of notice if so requested.   (*See* Fed R. Civ.

P. 5.1 (b) "Certification by the Court. The court must, under 28 U.S.C. §2403,

certify to the appropriate attorney general that a statute has been questioned.")